## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., <br><br>                        Plaintiffs, <br><br> v. <br><br> ŌURA HEALTH OY <br><br>                        Defendant. | Civil Action No. 2:25-cv-1181 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively "Samsung" or "Plaintiff"), by and through the undersigned attorneys, files this Complaint against Defendant Ōura Health Oy ("Oura" or "Defendant") for infringement of U.S. Patent Nos. 7,662,065; 9,008,973; 12,260,672; 12,279,849; 12,324,655; and 12,383,152 (collectively, the "Asserted Patents").  Samsung hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., specifically including 35 U.S.C. § 271.

2.      Samsung has filed this lawsuit to stop Oura's unlawful infringement of Samsung's patented inventions and to obtain damages and other relief.

## THE PARTIES

3.      SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-Ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do, 443-742, Republic of Korea.

4.      SEA is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

5.      Upon information and belief, Defendant Oura is a Finnish company with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

## BACKGROUND

6.      Samsung files this action to end Oura's unlicensed use of Samsung's patented technologies in products that compete directly against Samsung.  Oura develops, makes, uses, sells, offers for sale, and/or imports into the United States a number of smart ring products, including the Oura Ring Gen 2, Gen 3 and Gen 4 series of smart rings (collectively, the "Oura Ring").  Oura further provides for download software applications, such as the Oura App, running on iOS and Android OS smartphones and tablets, configured for use with the Oura Ring.

7.      Samsung is a world leader in the design, development, and manufacture of electronic products, ranging from advanced semiconductors to cutting edge consumer electronics, including mobile devices, smart televisions, and home appliances.  Since 2013, Samsung has designed, made, and sold the Galaxy Gear and Galaxy Watch products, which are wearable devices that offer numerous features, including fitness tracking, heart rate monitoring, and messaging.

8.      In 2024, Samsung expanded its portfolio of wearables by introducing the Galaxy Ring.  Building on its past extensive investments in health and fitness tracking technology, including the Galaxy Watch and the Samsung Health app, the Galaxy Ring monitors heart rate, heart rate variability, blood oxygen, movement, and sleep to provide users valuable insights and offer guidance to improve their health and wellbeing.

9.      Samsung is a leading developer of health and fitness tracking technology.  It employs well over 50,000 researchers and engineers, in research centers around the globe, dedicated to developing future technologies.  In 2023 alone, Samsung has invested over $21 billion

globally in research and development.  As a result of Samsung's pioneering innovations, Samsung consistently ranks among the top companies awarded patents in the U.S. and worldwide.  In 2023 alone, over 9,000 U.S. Patents were issued to Samsung, the most issued to any organization that year by a wide margin.

10.    Samsung's effort and innovation has made it a world leader in the research and deployment of wearables and health tracking.  The Asserted Patents represent novel and improved wearable technologies borne from Samsung's investment, innovation, and labor in this technological space.

## JURISDICTION AND VENUE

11.    Jurisdiction and venue for this action are proper in this Judicial District.

12.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284–285, among others.

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

14.    This Court has personal jurisdiction over Oura.  Oura has established minimum contacts with the United States as a whole and with Texas such that subjecting Oura to jurisdiction in this Court will not offend traditional notions of fair play and substantial justice.  Upon information and belief, Oura directly and indirectly through intermediaries (including subsidiaries, distributors, retailers, and others), has purposely availed itself of the laws and protections of the United States by knowingly shipping, distributing, selling, offering for sale, importing, advertising, and using products alleged to be infringing in this Complaint in the United States, the state of Texas, and this District.  Oura has targeted the United States by conducting regular business therein, and has placed and continues to place its products into the stream of commerce through

an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District.

15.     For example, Oura has purposefully sold infringing products with the expectation that they will be purchased by consumers in this District or has authorized retailers and distributors in the State of Texas and this District for the products alleged to be infringing in this Complaint. Oura has derived substantial revenues from its infringing acts occurring within the State of Texas and this District.  On information and belief, these infringing products have been and continue to be purchased by consumers in this District.  Samsung's claims for patent infringement arise directly from and/or relate to this activity.

16.     Oura has also purposely availed itself of the laws and protections of the United States, the State of Texas, and this District by filing legal actions in this District.  *See, e.g.*, Docket No. 1, *Oura Health Oy et al v. Ultrahuman Healthcare Pvt., Ltd. et al*, Case No. 2:23-cv-00396 (E.D. Tex. Sept. 1, 2023).

17.     Oura has also purposefully directed its business activities to the State of Texas as Oura  has represented that it intends to begin manufacturing operations in Texas through Ouraring. Specifically, Oura is opening a factory, expected to be fully operational in 2026, in Fort Worth, Texas to meet the needs of its contracts. *See* https://ouraring.com/blog/oura-us-department-of-defense/ (last visited October 22, 2025).

18.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)–(d) and 1400(b).  Oura is a foreign corporation that does not reside in the United States, and may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).  In addition, Oura has committed acts of patent infringement in this District, and Samsung has suffered harm in this District.

## THE ASSERTED PATENTS

19.     On February 16, 2010, the USPTO duly and lawfully issued U.S. Patent No. 7,662,065 ("the '065 Patent"), titled "Method and apparatus to provide daily goals in accordance with historical data."  A true and correct copy of the '065 Patent is attached as **Exhibit 1**.

20.     On April 14, 2015, the USPTO duly and lawfully issued U.S. Patent No. 9,008,973 ("the '973 Patent"), titled "Wearable sensor system with gesture recognition for measuring physical performance."  A true and correct copy of the '973 Patent is attached as **Exhibit 2**.

21.     On March 25, 2025, the USPTO duly and lawfully issued U.S. Patent No. 12,260,672 ("the '672 Patent"), titled "Wearable electronic device for obtaining biometric information."  A true and correct copy of the '672 Patent is attached as **Exhibit 3**.

22.     On April 22, 2025, the USPTO duly and lawfully issued U.S. Patent No. 12,279,849 ("the '849 Patent") titled "Method for performing wireless communication by using biosensor and electronic device therefor."  A true and correct copy of the '849 Patent is attached as **Exhibit 4**.

23.     On June 10, 2025, the USPTO duly and lawfully issued U.S. Patent No. 12,324,655 ("the '655 Patent), titled "Method for measuring biological signal and wearable electronic device for the same."  A true and correct copy of the '655 Patent is attached as **Exhibit 5**.

24.     On August 12, 2025, the USPTO duly and lawfully issued U.S. Patent No. 12,383,152 ("the '152 Patent") titled Electronic device including multiple optical sensors and method for controlling the same."  A true and correct copy of the '655 Patent is attached as **Exhibit 6**.

25.     Samsung owns, by assignment, all rights, title, and interest in the Asserted Patents, including the rights to recover past, present, and future damages for infringement.

26.     Each claim of the Asserted Patents was issued after a full and fair examination and is valid, enforceable, and patent-eligible.

27.    At least as of the filing date of this lawsuit, Oura has had knowledge of the Asserted Patents, and knowledge of how Oura and third parties infringe those patents.

## THE ACCUSED PRODUCTS

28.    The "Accused Products" are the Oura Ring products made, used, sold, offered for sale, or imported by Oura, and the Oura App, running on iOS and Android OS smartphones and tablets and configured for use with the Oura Ring.

29.    Oura makes, uses, sells, offers for sale, and/or imports into the United States a number of smart ring products and models.  These smart rings include, among others, the Oura Ring Gen 2, Gen 3, and Gen 4.  Oura actively markets and supports sales of Oura Ring products through its websites and other means, and sells these smart rings to retailers, distributors, and/or other resellers.

30.    Oura also provides for download software applications, such as the Oura App, running on iOS and Android OS smartphones and tablets, configured for use with the Oura Ring.

## COUNT I
## INFRINGEMENT OF THE '065 PATENT

31.    Samsung hereby incorporates the allegations of Paragraphs 1 through 30 as fully set forth herein.

32.    Each claim of the '065 Patent is valid, enforceable, and patent-eligible.

33.    The '065 Patent claims a specific, computer-implemented improvement to how personal exercise targets are generated and delivered, solving deficiencies in prior systems that merely logged activity or set static goals.  Claim 1 recites "identifying with a computer a daily raw target exercise level for a user; applying a goal setting algorithm with a computer to adjust the daily raw target exercise level for the user, the adjustment made in accordance with a motivational analysis of the user, wherein the motivational analysis is based on at least one factor that incites

the user to reach the daily raw target exercise level; displaying an adjusted target exercise level to the user, in order to achieve the daily raw target exercise level for the user;" and further "utilizing at least one of a plurality of goal setting algorithms that adjust the daily raw target exercise level for the user." '065 Patent at claim 1.  The claims incorporates a "motivational analysis" driven by defined data about the user's behavior and context.  *Id*.  By reciting a daily goal adjustment system anchored in user-specific and population-level data, where the adjustment is performed by selecting from a plurality of goal setting algorithms, the claims go beyond abstract, then-existing goal-setting systems and disclose a concrete technical scheme for personalized, adaptive daily targets—a distinction the U.S. Patent Office recognized was not present in the art.  '065 Patent Notice of Allowance and Fees Due (October 13, 2009) at page 3.

34.    The claims are directed to—and recite—tangible, computer-implemented structures and user-facing displays, not an abstract idea.  The system claims require a "computer-implemented system to set exercise goals" with "target setting logic," "goal adjusting logic," and "a communications logic," as well as "a user interface" and "a display."  '065 Patent at claims 8, 17.  The display and user interface are configured to present progress in a particularized manner.  In particular, the claims require "a display to show a two-dimensional progress graph including the target step count throughout the day, the progress graph showing a current achievement of the user and progress toward the target step count in relationship to a timeline for the day, and a plurality of goals to be reached throughout the day."  *Id*. at claim 17.  These recitations tie the claimed advance to specific algorithms as well as novel and improved data presentation that updates against a daily timeline to guide behavior.

35.    Furthermore, the specification reinforces the concrete, technological nature of the invention and its improvements over prior approaches.  For example, it describes how the system

"automatically receives data from the appropriate device, i.e., exercise equipment or pedometer," and how "user specific thresholds and alert rules enable the system to be customized per user," including reminders when the user is "1000 steps behind the current goal level for the day." *Id*. at 2:4-6, 3:42-46.   The invention thus uses device integration, stored thresholds, and rules to implement adaptive goals and real-time feedback.

36.    The prosecution record further confirms that patent-eligibility under § 101 was considered and resolved in favor of the applicant.  Initially, certain system claims faced a § 101 rejection as "functional descriptive material," but the applicant overcame this rejecting after amending the claims to  recite that the system is "computer-implemented" and reciting machine components and specific data flows, after which the U.S. Patent Office withdrew its § 101 rejection. '065 Patent Non-Final Rejection (28 November 2007) at page 4; '065 Patent Applicant Arguments/Remarks Made in an Amendment (28 February 2008) at page 9; '065 Patent Final Rejection (30 May 2008) at page 2.

37.    To further bolster the patent-eligibility of the claims, the U.S. Patent Office entered an amendment to method claim 1 to make explicit that the daily target identification and adjustment are performed "with a computer," and added the express limitation "utilizing at least one of a plurality of goal setting algorithms that adjust the daily raw target exercise level for the user." '065 Patent Notice of Allowance and Fees Due (October 13, 2009) at page 2.  Similarly, U.S. Patent Office entered an amendment to system claim 8 (claim 7 before renumbering) to add the limitation "a goal setting algorithm selector to select one of a plurality of goal setting algorithms that adjust the daily raw target exercise level for the user." *Id.* at 3.  In system claim 17 (claim 15 before renumbering), the U.S. Patent Office entered an amendment to add "computer adjusted" descriptor  before "goal adjusting logic to generate a target step count for a day" and

added the limitation "the goal adjusting logic is selected from a plurality of stored goal setting algorithms that adjust the daily raw target exercise level for the user." *Id.* at 3.  These amendments further root the claimed subject matter in computer functionality and the specific, unconventional multi-algorithm selection scheme that distinguishes the invention from prior art systems relying on single, static targets or non-adaptive displays.

38.     The Accused Products meet each and every limitation of at least claim 1 of the '065 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 7** and incorporated herein by reference.

39.     Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '065 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

40.     Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '065 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '065 Patent.  Despite having knowledge of the '065 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents.  For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '065 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products.  Moreover, upon information and belief, Oura takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least

claim 1 of the '065 Patent. Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United States, knowing that such importation or sale would occur. Oura has engaged in these activities with knowledge of the '065 Patent and knowledge that the induced acts constitute infringement. Oura's inducement of infringement of the '065 Patent is ongoing.

41.     Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '065 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring). The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '065 Patent. Oura has engaged in these activities despite having notice of the '065 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 1 of the '065 Patent. Oura's contributory infringement of the '065 Patent is ongoing.

42.     To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '065 Patent under 35 U.S.C. § 287.

43.     To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '065 Patent following its awareness of the '065 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. For example, Oura has been on notice of the '065 Patent and its infringement of the '065 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

44.     As a result of Oura's infringement of the '065 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this Court.  Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial.

45.     By its actions, Oura has injured Samsung and is liable to Samsung for infringement of the '065 Patent pursuant to 35 U.S.C. § 271.  Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

## COUNT II
## INFRINGEMENT OF THE '973 PATENT

46.     Samsung hereby incorporates the allegations of Paragraphs 1 through 45 as fully set forth herein.

47.     The '973 Patent explains that existing consumer exercise tracking was confined to specialized devices tailored to tracking motion parameters using specialized sensors.  For example, walkers, runners, and cyclists used wearable sensors that measure physical performance parameters such as distance traveled and pace/movement speed ('973 Patent at 1:15-25), with such sensors often being cumbersome and inconvenient to use during a typical workout (*id.* at 3:44-55).  Strength trainers, if their activities could be tracked at all, would be confined to tracking while using commercial/institutional grade, "sectorized" strength training machines in health clubs and rehabilitation facilities (*id.* at 1:24-49, 2:5-16, 3:55-4:15).  To track freeform exercise with a broad range of physical activities required using biomechanics laboratories having sophisticated and expensive instrumentation for obtaining and accumulating data.  *Id.* at 1:50-56.  Such studies in laboratory environments conventionally relied on technicians and post-processing of the sensor signals to extract spurious signals from those produced by the intended movement.  *Id.* at 2:39-45;

3:64-7.  The prior art therefore failed to teach a user-friendly, reliable means for detecting exercise sets and outputting performance parameters.  *Id.* at 2:2-63.

48.     The '973 Patent improves upon this conventional prior art for physical exercise measurement devices.  It specifically teaches the use of an accelerometer disposed on a sensor ring for tracking three axes of linear motion, working in conjunction with a base station, to measure user movements, detect exercises, and calculate and display exercise performance parameters.  *Id.* at 4:18-57.  The finger-mounted sensor provides stable mounting of an accelerometer, as well as recognition of user gestures and actions for recognition of exercise types.  *Id.* at 4:58-5:15.  The '973 Patent therefore teaches a physical exercise device and method using a body-mounted sensor including an accelerometer, communicating the movement of the sensor to an information processor, recognizing the at least start gesture that involves the movement of the accelerometer, after recognizing the at least one start gesture, tracking movement of the sensor while the user performs physical exercise with exercise equipment, and calculating motion parameters of the physical exercise from tracked movement of the sensor.  *Id.* at claim 14.

49.     The inventions of the '973 Patent offer significant advantages over known and conventional methods of exercise tracking in the prior art.  For example, the '973 Patent offers an intuitive, simplified user experience for exercise tracking that does not rely on multiple sensors and cumbersome means for the user to provide notification of exercise start and stop points.  *Id.* at 7:9-19.  The '973 Patent further offers a method for exercise tracking that discriminates exercise from spurious signals, such as by using an unconventional finger-worn motion-detecting sensor.  *Id.* at 7:20-47; 8:18-24.  The '973 Patent further allows for exercise tracking on a device that has no advance knowledge of the exercise to be performed by the user.  *Id.* at 7:66-8:17.  These novel technological approaches of the '973 Patent were highly unconventional for their time and were

immediately allowed by the U.S. Patent Office over prior art during prosecution subject only to clarifying amendments to the claim language.  *See* '973 Patent Non-Final Rejection (June 18, 2014) at page 5; Notice of Allowance and Fees Due (February 26, 2015) at pages 2-3.

50.    The Accused Products meet each and every limitation of at least claim 14 of the '973 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 8** and incorporated herein by reference.

51.    Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '973 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

52.    Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '973 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '973 Patent.  Despite having knowledge of the '973 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents.  For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '973 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products.  Moreover, upon information and belief, Oura takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least claim 14 of the '973 Patent.  Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United

States, knowing that such importation or sale would occur.  Oura has engaged in these activities with knowledge of the '973 Patent and knowledge that the induced acts constitute infringement. Oura's inducement of infringement of the '973 Patent is ongoing.

53.    Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '973 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring).  The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '973 Patent.  Oura has engaged in these activities despite having notice of the '973 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 14 of the '973 Patent.  Oura's contributory infringement of the '973 Patent is ongoing.

54.    To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '973 Patent under 35 U.S.C. § 287.

55.    To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '973 Patent following its awareness of the '973 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. For example, Oura has been on notice of the '973 Patent and its infringement of the '973 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

56.    As a result of Oura's infringement of the '973 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this

Court. Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial.

57. By its actions, Oura has injured Samsung and is liable to Samsung for infringement of the '973 Patent pursuant to 35 U.S.C. § 271. Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

## COUNT III
## INFRINGEMENT OF THE '672 PATENT

58. Samsung hereby incorporates the allegations of Paragraphs 1 through 57 as fully set forth herein.

59. The '672 Patent explains as background that consumers were developing more interest in health and wellbeing, along with interest in technology products capable of checking on a user's health condition. '672 Patent at 1:23-44. To respond to this need, the '672 Patent discloses electronic devices that may include a sensor for measuring a user's biometric information. *Id.* at 1:34-39.

60. In particular, the '672 Patent claims a physical, wearable electronic device for obtaining biometric information using a novel combination of light sources and sensors, and algorithms. For example, claim 1 recites "based on the first light emitted by the first light source at the first time, obtain first information corresponding to part of the first light that is received by the first sensor via the finger," "based on the second light emitted by the first light source at the second time, obtain second information corresponding to part of the second light that is received by the second sensor via the finger," and "acquire an oxygen saturation information of the user based on at least one of the first information or the second information." *Id.* at claim 1.

61. The claims are directed to—and recite—tangible structures and electronics. The system claims recite, for example, a "ring-type wearable electronic device," and require a "first

light source," "first sensor," and "second sensor," as well as a "flexible printed circuit board," "processor," and "memory." *Id*. at claims 1, 10, 19. These recitations tie the claimed advance to specific machine components.

62. The Accused Products meet each and every limitation of at least claim 1 of the '672 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 9** and incorporated herein by reference.

63. Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '672 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

64. Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '672 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '672 Patent. Despite having knowledge of the '672 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents. For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '672 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products. Moreover, upon information and belief, Oura takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least claim 1 of the '672 Patent. Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United States,

knowing that such importation or sale would occur. Oura has engaged in these activities with knowledge of the '672 Patent and knowledge that the induced acts constitute infringement. Oura's inducement of infringement of the '672 Patent is ongoing.

65.    Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '672 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring). The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '672 Patent. Oura has engaged in these activities despite having notice of the '672 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 1 of the '672 Patent. Oura's contributory infringement of the '672 Patent is ongoing.

66.    To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '672 Patent under 35 U.S.C. § 287.

67.    To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '672 Patent following its awareness of the '672 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. For example, Oura has been on notice of the '672 Patent and its infringement of the '672 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

68.    As a result of Oura's infringement of the '672 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this

Court.  Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial.

69.     By its actions, Oura has injured Samsung and is liable to Samsung for infringement of the '672 Patent pursuant to 35 U.S.C. § 271.  Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

<strong><u>COUNT IV</u></strong><br><strong><u>INFRINGEMENT OF THE '849 PATENT</u></strong>

70.     Samsung hereby incorporates the allegations of Paragraphs 1 through 69 as fully set forth herein.

71.     The '849 Patent discloses electronic health devices, including a wearable device and an accompanying battery charging device. '849 Patent at 1:21-36, claim 1. The disclosed device may detect biometric information and/or provide health care services for a user by sensing the biometric information using the portable electronic device. *Id.* at 1:21-36. For example, the disclosed device may include a biometric sensor capable of performing optical measurements, and biometric information such as a heart rate may be measured using a biometric sensor. *Id.*

72.     The '849 Patent claims a physical wearable electronic device capable of transmitting information to an accompanying wireless battery charging device. For example, claim 1 recites "while the wearable device is positioned on the wireless charger for charging of the battery using the power wirelessly received through the power receiving circuitry, transmit, to the wireless charger using the light emitting unit, first infrared (IR) signals that are associated with information relating to a charging status of the wearable device" and "while the wearable device is positioned on the wireless charger for the charging of the battery using the power wirelessly received through the power receiving circuitry, transmit, to the wireless charger using the light emitting unit, second IR signals that are associated with information relating to a notification of

the wearable device that is associated with a state of the wearable device related to the wireless communication function of the wearable device." *Id*. at claim 1.

73.    The claims are directed to—and recite—tangible structures and electronic components and circuitry.  The system claims recite, for example, a "wearable device," and require "wireless communication circuitry," "a sensor including a light emitting unit," "a battery," "power receiving circuitry including a coil," "memory storing instructions," and "a processor."  '849 Patent at claims 1, 9, 13. These recitations tie the claimed advance to specific machine components.

74.    The Accused Products meet each and every limitation of at least claim 1 of the '849 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 10** and incorporated herein by reference.

75.    Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '849 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

76.    Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '849 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '849 Patent.  Despite having knowledge of the '849 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents.  For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '849 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products.  Moreover, upon information and belief, Oura takes active

steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least claim 1 of the '849 Patent. Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United States, knowing that such importation or sale would occur. Oura has engaged in these activities with knowledge of the '849 Patent and knowledge that the induced acts constitute infringement. Oura's inducement of infringement of the '849 Patent is ongoing.

77.     Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '849 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring). The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '849 Patent. Oura has engaged in these activities despite having notice of the '849 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 1 of the '849 Patent. Oura's contributory infringement of the '849 Patent is ongoing.

78.     To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '849 Patent under 35 U.S.C. § 287.

79.     To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '849 Patent following its awareness of the '849 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

For example, Oura has been on notice of the '849 Patent and its infringement of the '849 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

80.     As a result of Oura's infringement of the '849 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this Court.  Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial.

81.     By its actions, Oura has injured Samsung and is liable to Samsung for infringement of the '849 Patent pursuant to 35 U.S.C. § 271.  Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

## COUNT V
## INFRINGEMENT OF THE '655 PATENT

82.     Samsung hereby incorporates the allegations of Paragraphs 1 through 81 as fully set forth herein.

83.     The '655 Patent explains that in existing electronic health devices, sensors had been used to gather health-related information during a workout or diet session, including heart rate information.  But these prior art devices did not measure resting heart rate using electronic devices, including by using wearable devices that afford more convenience and a more user-friendly form factor than smartphones or other portable terminals that predominated the marketplace at the time. '655 Patent at 1:24-42.  As the '655 Patent explains, a resting heart rate is ideally measured across several consecutive days while the user lies in bed; however, it can be inconvenient and unreliable to ask users to consistently perform daily resting heart rate measurements in the same time duration before getting up.  *Id.* at 1:43-52.  Alternatively, continuously measuring resting heartrate based on everyday use of an electronic device results in significant battery consumption and fails to distinguish between a user's resting heart rate and active heart rate.  *Id.* at 1:53-57.

84.    The '655 Patent improves upon the prior art by teaching a novel and specific wearable electronic device and method of using that device, whereby resting pulse rate is identified during a first time period responsive to the movement of the wearable electronic device being less than the predetermined threshold during a first time period, identifying a resting pulse rate based on the biological signal which is received and, responsive to the movement of the wearable electronic device being greater than the predetermined threshold during a second time period, disregarding biological signals from identifying the resting pulse rate of the user.  *Id.* at claims 1, 7, 13.  Further, the '655 Patent improves upon conventional systems using a smartphone or portable terminal by teaching use of a wearable electronic device, whereby information obtained from sensors on the wearable electronic device are transmitted to an external device that displays the information regarding the resting pulse rate of the user.  *Id.*

85.    The inventions of the '655 Patent offers significant advantages over known and conventional methods and systems in the prior art.  For example, the '655 Patent allows for measurement of heart rate during time periods with little variation in movement, leading to reduced errors.  *Id.* at 33:31-37.  The '655 Patent allows the wearable electronic device to automatically measure the user's resting heart rate during daily use, allowing for daily, consecutive measurement of resting heart rate.  *Id.* at 33:37-43.  The '655 Patent further allows the wearable electronic device to measure heart rate when the user is determined to be in a resting state, offering power savings compared to continuous or periodic sensor activation.  *Id.* at 33:44-49.

86.    The Accused Products meet each and every limitation of at least claim 7 of the '655 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 11** and incorporated herein by reference.

87.     Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '655 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

88.     Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '655 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '655 Patent.  Despite having knowledge of the '655 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents.  For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '655 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products.  Moreover, upon information and belief, Oura takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least claim 7 of the '655 Patent.  Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United States, knowing that such importation or sale would occur.  Oura has engaged in these activities with knowledge of the '655 Patent and knowledge that the induced acts constitute infringement.  Oura's inducement of infringement of the '655 Patent is ongoing.

89.     Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '655 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or

combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring).  The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '655 Patent.  Oura has engaged in these activities despite having notice of the '655 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 7 of the '655 Patent.  Oura's contributory infringement of the '655 Patent is ongoing.

90.    To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '655 Patent under 35 U.S.C. § 287.

91.    To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '655 Patent following its awareness of the '655 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. For example, Oura has been on notice of the '655 Patent and its infringement of the '655 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

92.    As a result of Oura's infringement of the '655 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this Court.  Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial.  By its actions, Oura has injured Samsung and is liable to Samsung for infringement of the '655 Patent pursuant to 35 U.S.C. § 271. Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

## COUNT VI
## INFRINGEMENT OF THE '152 PATENT

93.    Samsung hereby incorporates the allegations of Paragraphs 1 through 92 as fully set forth herein.

94.    The '152 Patent claims a specific improvement to conventional ring-type wearable devices.  The claims of the '152 Patent recite a specific combination of a plurality of light emitters and a plurality of light receivers, including three discrete wavelength band light emitters along the inner surface of the ring, in contact with the finger, along with a motion sensor; utilizing signals from the motion sensor and light receivers to determine a current state of the user as an exercise state or sleep state; and selectively driving a different number of light emitters based on the identified state.  *E.g.*, '152 Patent, claim 1.

95.    The use of a plurality of light emitters and sensors represent an improvement over conventional ring-type wearable devices.  Using a plurality of discrete wavelength band light emitters and a plurality of sensors accounts for a variety of discrete user states, which may favor the use of certain emitters and sensors.  The use of multiple light emitters and receivers additionally represents an enhancement over conventional ring-type wearable devices that may not perform effectively depending on the orientation of the ring as worn by the user.  '152 Patent at 1:46-51.

96.    The determination of sleep and exercise states and selective driving of specific sensors based on those states represents an improvement over conventional ring-type wearable devices.  While conventional devices may be equipped with a photoplethysmography (PPG) sensor to acquire information about the user's body, such as heart rate, stress, blood oxygen saturation (SpO2), and blood pressure ('152 Patent at 1:39-45), such conventional devices failed to discriminate between different user states that may alter the suitability and reliability of different sensors.  The '152 Patent teaches the use of three different light emitters, one or more of which may be better suited for use during exercise and sleep states.  By utilizing three light emitters and determining the state of the user using light sensors paired with a motion sensor, the wearable

device is able to activate the light sensors suited for the particular user state, while refraining from activating light sensors where appropriate to conserve a wearable device's limited power.

97.     The Accused Products meet each and every limitation of at least claim 1 of the '152 Patent, literally or under the doctrine of equivalents, as set forth in **Exhibit 12** and incorporated herein by reference.

98.     Upon information and belief, Oura has directly infringed and continues to directly infringe one or more claims of the '152 Patent in at least this District by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271.

99.     Upon information and belief, at least as of the filing of this Complaint, Oura is inducing infringement of the '152 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '152 Patent.  Despite having knowledge of the '152 Patent since at least the filing of this Complaint, Oura has actively encouraged others to infringe the patent, literally or by the doctrine of equivalents.  For example, upon information and belief, Oura has knowingly and intentionally induced manufacturers, shippers, distributors, retailers, customers, and/or end-users to directly infringe (literally and/or under the doctrine of equivalents) the '152 Patent by importing into the United States, using, and/or selling and offering to sell in the United States the Accused Products.  Moreover, upon information and belief, Oura takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused Products that infringe at least claim 1 of the '152 Patent.  Upon information and belief, such steps by Oura include, among other things, making or selling the Accused Products for importation into or sale in the United States, knowing that such importation or sale would occur.  Oura has engaged in these activities with

knowledge of the '152 Patent and knowledge that the induced acts constitute infringement. Oura's inducement of infringement of the '152 Patent is ongoing.

100.    Upon information and belief, at least as of the filing of this Complaint, Oura is contributorily infringing the '152 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate the Accused Products into other products or combinations of products (e.g., smartphone or tablet used in combination with an Oura Ring). The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices, combinations of devices, or systems that infringe the '152 Patent. Oura has engaged in these activities despite having notice of the '152 Patent, and the Accused Products that Oura has sold and/or provided to customers embody a material part of the claimed invention of at least claim 1 of the '152 Patent. Oura's contributory infringement of the '152 Patent is ongoing.

101.    To the extent compliance is required, Samsung has complied with and may recover pre-suit damages for Oura's infringement of the '152 Patent under 35 U.S.C. § 287.

102.    To the extent that Oura has continued or continues to make, use, sell, offer for sale and/or import into the United States the Accused Products that infringe the '152 Patent following its awareness of the '152 Patent, Oura's infringement is willful and entitles Samsung to an award of enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. For example, Oura has been on notice of the '152 Patent and its infringement of the '655 Patent at least since the filing of this Complaint, and yet has continued its infringing activities.

103.    As a result of Oura's infringement of the '152 Patent, Samsung has been irreparably harmed and will continue to be harmed unless and until Oura's infringement is enjoined by this Court. Samsung is entitled to recover for damages and ongoing royalties sustained as a result of Oura's wrongful acts in an amount subject to proof at trial. By its actions, Oura has injured

Samsung and is liable to Samsung for infringement of the '152 Patent pursuant to 35 U.S.C. § 271. Samsung is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Samsung prays for relief as follows:

A. A judgment that Oura has infringed, directly or indirectly, each of the Asserted Patents;

B. A judgment that Oura has willfully infringed each of the Asserted Patents;

C. A judgment requiring Oura to pay Samsung damages adequate to compensate Samsung for Oura's infringement of each of the Asserted Patents, including compensatory damages, costs, and expenses, under 35 U.S.C. § 284;

D. A judgment requiring Oura to pay Samsung pre-judgment and post-judgment interest on the damages assessed;

E. A judgment requiring Oura to pay Samsung enhanced damages pursuant to 35 U.S.C. § 284;

F. A judgment requiring Oura to pay supplemental damages to Samsung, including interest, with an accounting, as needed;

G. A judgment enjoining Oura from infringing the Asserted Patents;

H. An award of reasonable attorneys' fees, including pursuant to 35 U.S.C. § 285; and

I. Any and all other relief that the Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues raised by this complaint.

DATED: December 1, 2025                Respectfully submitted,

                                       /s/ Melissa R. Smith
                                       Ryan K. Yagura (Tex. Bar No. 24075933)
                                       ryagura@omm.com
                                       **O'MELVENY & MYERS LLP**
                                       400 S. Hope Street
                                       Los Angeles, CA 90071
                                       Telephone: 213-430-6000
                                       Facsimile: 213-430-6407

                                       Marc Pensabene (N.Y. Bar No. 2656361)
                                       mpensabene@omm.com
                                       Laura B. Gore (N.Y. Bar No. 5172879)
                                       lgore@omm.com
                                       Nathaniel Legum (N.Y. Bar No. 6168975)
                                       nlegum@omm.com
                                       **O'MELVENY & MYERS LLP**
                                       1301 Avenue of the Americas, 17th FL
                                       New York, NY 10019
                                       Telephone: 212-326-2000
                                       Facsimile: 212-326-2061

                                       Mark Liang (Cal. Bar No. 278487)
                                       mliang@omm.com
                                       Bill Trac (Cal. Bar No. 281437)
                                       btrac@omm.com
                                       Eric T. Ong (Cal. Bar No. 352890)
                                       eong@omm.com
                                       **O'MELVENY & MYERS LLP**
                                       Two Embarcadero Center, 28th Floor
                                       San Francisco, CA  94111
                                       Telephone: 415-984-8846
                                       Facsimile: 415-984-8701

                                       Melissa Smith
                                       melissa@gillamsmithlaw.com
                                       **GILLAM & SMITH LLP**
                                       303 South Washington Avenue
                                       Marshall, TX 75670
                                       Telephone: (903) 934-8450
                                       Facsimile: (903) 934-92

                                       *Attorneys for Samsung Electronics Co., Ltd.*
                                       *and Samsung Electronics America, Inc.*